Complaint served on Pittsylvania County

*Process Serving* ◆ *Legal Court Documents* ◆ *Investigations*

## JAMES R. PARKER
*Licensed P.I. / Process Server*

Roanoke VA, 24018     Cell: (540) 797-4513
dlparker12@aol.com     Home: (540) 776-3345

CIRCUIT COURT
Received & Filed
8:33am
FEB 26 2019
By _Holly Pais_
Deputy Clerk
CITY OF ROANOKE

VIRGINIA:

IN THE ROANOKE CITY CIRCUIT COURT

SHERRY ROBERTS FLANAGAN,

Plaintiff,

v.

PITTSYLVANIA COUNTY, VIRGINIA,

NANCY EANES
In her official capacity,

PATRICIA EVANS
In her official capacity,

ANDREA JOHNSON
In her official capacity,

RONALD SCEARCE,
In his individual capacity and
in his official capacity,

HENRY HURT,

AND

VICTOR INGRAM,

Defendants.

Case No.: CL19-478

## COMPLAINT

COMES NOW, Plaintiff Sherry Roberts Flanagan (hereinafter, "Plaintiff" or "Ms. Flanagan") by counsel, and hereby presents this Complaint against Defendants Pittsylvania County, Virginia (hereinafter, at times, the "County"), Nancy Eanes, Patricia Evans, and Andrea Johnson, in their official capacities as members of the County Department of Social Services ("DSS") Board, Ronald Scearce, in his individual capacity and in his official capacity as a member of the County DSS Board and County Board of

Supervisors, Henry Hurt, and Victor Ingram. In support thereof, Ms. Flanagan provides as follows:

## STATEMENT OF FACTS

1. In or about May of 2006, Ms. Flanagan, a resident of Stanleytown, Virginia, was hired by the County as a DSS Supervisor.

2. Pittsylvania County is located within the Commonwealth of Virginia, and governs itself through a seven-member Board of Supervisors ("BOS") elected by the citizenry.

3. DSS receives oversight from, and is supervised by, an eight member administrative DSS Board, which includes one member of the Pittsylvania County BOS. The DSS Board, in turn, receives oversight from the County BOS.

4. At all times during her employment with the County, Ms. Flanagan performed her duties faithfully and diligently and, after a series of exemplary work performance reviews, Ms. Flanagan was promoted to DSS Director in 2009 – a position she held until her unlawful termination from employment in August of 2018.

5. Specifically, Ms. Flanagan was subjected to a stigmatizing and defamatory public smear campaign – orchestrated by BOS member Mr. Scearce, Mr. Hurt, and Mr. Ingram, and created in part to rally County community members to advance a political agenda and weaken DSS autonomy and authority – that ultimately resulted in Ms. Flanagan's termination.

6. Upon information and belief, the plan to defame and terminate Ms. Flanagan commenced in or about January of 2018, when DSS Fraud Investigator Dawn Hankins, and others, purportedly complained of a hostile work environment created by Ms. Flanagan.

7. In February of 2018, Mr. Scearce, who serves as a liaison to the DSS Board,

demanded to meet with former County DSS Board Chairman Rev. Stedman Payne to discuss Ms. Flanagan, without Ms. Flanagan's knowledge, and began referring to DSS as "persecut[ing]" its employees, stating that "Sherry [Flanagan] . . . is going after people still working at DSS that she believes are a threat", and referring to Ms. Flanagan as a "bully".

8. None of these inflammatory statements concerning Ms. Flanagan were true.

9. Additionally, on or about February 28, 2018, during the DSS Board's regular meeting, Mr. Scearce openly stated that there were several women claiming Ms. Flanagan created a hostile work environment.

10. However, Mr. Scearce then called a closed session of the DSS Board outside of the presence of Ms. Flanagan, so that Ms. Flanagan could not present evidence in her defense, or otherwise clear her name.

11. On or about March 5, 2018, Mr. Scearce sent a Freedom of Information Act ("FOIA") request to Ms. Flanagan – the first of many similar FOIA requests initiated by Mr. Scearce in 2018 – seeking DSS Visa card expenditure receipts for the previous year. Such information is provided to DSS Board members during each regular monthly board meeting, and was available to Mr. Scearce without FOIA assistance.

12. Shortly thereafter, Mr. Scearce spoke with local media outlets *Go Dan River*, the *Chatham Star-Tribune*, and WSET, falsely and maliciously describing Ms. Flanagan as creating a hostile work environment at DSS, deriding her leadership ability, and attacking her personal and professional character.

13. At no time did Mr. Scearce provide Ms. Flanagan with even a cursory opportunity to respond to, or defend herself from, these false assertions against her.

14. Throughout the spring and summer of 2018, despite the fact that no formal

grievances had been filed concerning Ms. Flanagan, the DSS Board called special meetings and held interviews with various current and former DSS employees to discuss and investigate DSS and Ms. Flanagan.

15. Upon information and belief, these meetings and interviews were initiated at the behest of Mr. Scearce.

16. Again, Ms. Flanagan was not provided with an adequate opportunity to respond, despite her many requests to provide clarification and information, and ultimately clear her name.

17. Additionally, in or about April of 2018, Mr. Hurt, a local reporter, Mr. Ingram, a self-described independent investigator, and others, either acting on Mr. Scearce's direction or directly inspired by Mr. Scearce's false comments to the press, began attacking Ms. Flanagan's personal and professional reputation on social media and through the local news media.

18. These attacks include numerous malicious social media posts that publicly disseminated false and slanderous information about Ms. Flanagan, including references to Ms. Flanagan as an abuser, a liar, a witch, and a donkey.

19. Specifically, Mr. Hurt, who, upon information and belief was receiving false information regarding Ms. Flanagan from Mr. Scearce, wrote and published multiple defamatory articles and social media posts concerning Ms. Flanagan and her work at DSS, and harassed Ms. Flanagan via email.

20. Mr. Ingram, similarly, attacked and degraded Ms. Flanagan's personal and professional reputation in social media posts and through a weekly Facebook post titled "Sherry's Shenanigans", stalked Ms. Flanagan, and publicly posted her sensitive personal information on Facebook.

21. Then, on or about April 5, 2018, Mr. Scearce initiated a public meeting in which individuals openly and falsely attacked Ms. Flanagan's personal and professional character and reputation.

22. During this timeframe, the Commonwealth of Virginia investigated the allegations of hostile work environment, and completed a thorough compliance assessment of DSS.

23. On or about June 25, 2018, the Commonwealth released the findings of its investigation.

24. The investigation found that each allegation of hostile work environment at DSS was unfounded, and noted that DSS maintains "a positive work environment" and "performs well and meets or exceeds performance targets for most public assistance programs."

25. In addition, Ms. Flanagan and DSS were found to be in compliance with state laws and regulations.

26. Despite the findings by the Commonwealth, Mr. Scearce, Mr. Hurt, and Mr. Ingram continued to speak to the press, the County BOS, and others in the community to intentionally degrade Ms. Flanagan's personal and professional character.

27. As an example, on July 17, 2018, during a BOS meeting, Mr. Scearce, in an effort to garner support for DSS Board dissolution, encouraged the BOS members to "follow the social media accounts of Vic Ingram and Henry Hurt" that consistently attacked Ms. Flanagan's character, and also referred to DSS – and by association, Ms. Flanagan – as "corrupt" and a "mess."

28. Also on July 17, 2018, Mr. Scearce referred to DSS as an "appalling work environment" in a social media post.

29. Additionally, on July 26, 2018, the County BOS held a closed session, seconded by Mr. Scearce. Upon information and belief, during this closed session, Mr. Scearce made numerous defamatory remarks about Ms. Flanagan.

30. Ms. Flanagan again was not provided with an appropriate opportunity to respond to, or defend herself from, Mr. Scearce's false and defamatory statements which, upon information and belief, were made in a continued effort to discredit the DSS Board and force the DSS under County administration.

31. Indeed, Ms. Flanagan, on several occasions, offered to specifically address any BOS concerns, and appeared at each BOS meeting between February 2018 and August 2018 to be available for questioning. However, she never received the invitation to speak, even when the matter was placed on the BOS meeting agenda.

32. Additionally, upon information and belief, Mr. Hurt – encouraged by Mr. Scearce – hired Mr. Ingram, who has a prior unrelated and negative personal history with Ms. Flanagan, to create a biased report full of false and misleading statements that, among other things, accused Ms. Flanagan of running a "cancerous operation". This report's purpose was to provide support to falsehoods regarding Ms. Flanagan and to create a pretextual reason for retaliation against Ms. Flanagan.

33. Mr. Ingram's report was sent to the County Administrator and BOS in August of 2018.

34. Mr. Scearce, Mr. Hurt, and Mr. Ingram's herculean efforts to discredit Ms. Flanagan, slander her good name and reputation, and divest the DSS Board of authority have included multiple false and misleading statements that were intentionally published to the community through various media outlets and County meetings.

35. Upon information and belief, Mr. Scearce, Mr. Hurt, and Mr. Ingram had actual

6

or constructive knowledge that the statements concerning Ms. Flanagan and DSS were false and/or made with reckless disregard for whether the statements were false.

36. Indeed, at an August 15, 2018 meeting of the Virginia State Board of Social Services ("VSBSS"), at which Ms. Flanagan spoke and relayed to VSBSS her grave concerns regarding Mr. Scearce's conduct and its impact on the DSS staff, Deputy Commissioner J.R. Simpson stated that the public smear campaign against Ms. Flanagan and DSS amounted to "one of the worst cases of cyber-bullying I've ever seen."

37. Similarly, State DSS Commissioner Duke Storen has stated to local media outlets that Mr. Scearce has been "actively disparaging and working against the local [DSS] department."

38. Unfortunately, Mr. Scearce, Mr. Hurt, and Mr. Ingram's smear campaign against Ms. Flanagan was successful, as their concerted effort to disseminate false and defamatory statements against Ms. Flanagan across multiple third party media and public platforms ultimately resulted in her unlawful termination from employment on August 30, 2018.

39. Ms. Flanagan's termination was the result of a 4-3 vote by the County DSS Board. Defendants Mr. Scearce, Ms. Eanes, Ms. Evans, and Ms. Johnson voted in favor of Ms. Flanagan's termination.

40. The County is liable for the acts and/or omissions of Mr. Scearce based upon the doctrine of *respondeat superior*.

41. Of note, Mr. Scearce is currently under investigation by VSBSS due to his outrageous conduct and active intentional activities serving to undermine DSS and the community members of Pittsylvania County. In December of 2018, VSBSS voted to temporarily suspend Mr. Scearce from his Board position.

### COUNT I: DEFAMATION AND DEFAMATION *PER SE*
### (against Defendants Mr. Scearce, Mr. Hurt, and Mr. Ingram)

42. Ms. Flanagan incorporates by reference herein the preceding paragraphs of this Complaint.

43. Ms. Flanagan was defamed when Mr. Scearce, Mr. Hurt, and Mr. Ingram made numerous malicious and false statements concerning Ms. Flanagan's personal and professional character and reputation, and wrongfully imputed to Ms. Flanagan an unfitness to perform the duties of her employment.

44. These false statements ultimately resulted in Ms. Flanagan's wrongful termination from employment on August 30, 2018 and, consequently, have prejudiced Ms. Flanagan in her profession, thus constituting defamation *per se*.

45. Mr. Scearce, Mr. Hurt, and Mr. Ingram's false insinuations, accusations, and statements concerning Ms. Flanagan purport to be statements of fact, not statements of opinion, and egregiously misstate the truth.

46. Mr. Scearce, Mr. Hurt, and Mr. Ingram publicly uttered these false and defamatory statements to County employees, members of the BOS, the community, and the press, who heard and understood these false and defamatory accusations to mean that Ms. Flanagan was unfit to perform the duties of her employment, and was legitimately terminated for cause.

47. Although they had a duty not to defame Ms. Flanagan, Mr. Scearce, Mr. Hurt, and Mr. Ingram must have known of the falsity of their statements. Even if they subjectively believed the statements to be true, they lacked a reasonable basis for such

8

beliefs and/or acted negligently in failing to ascertain the truth.

48. As a direct and proximate result of Mr. Scearce, Mr. Hurt, and Mr. Ingram's conduct, Ms. Flanagan has suffered humiliation, embarrassment, mortification, shame, vilification, ridicule, exposure to public infamy, disgrace, scandal, injury to her professional and personal reputations, financial loss, has been hampered in the conduct of her business and affairs, and other damages.

### COUNT II: FIRST AMENDMENT FREEDOM OF EXPRESSION RETALIATION AND WRONGFUL TERMINATION IN VIOLATION OF 42 U.S.C § 1983
### (against Defendants Pittsylvania County, Mr. Scearce, Ms. Eanes, Ms. Evans, and Ms. Johnson)

49. Ms. Flanagan incorporates by reference herein the preceding paragraphs of this Complaint.

50. Ms. Flanagan engaged in political speech, to-wit, her August 15, 2018 public comments to VSBSS concerning BOS member Mr. Scearce's defamatory and malicious conduct, and its impact on Ms. Flanagan and her DSS staff.

51. Ms. Flanagan's August 15, 2018 comments to VSBSS touched upon matters of public concern.

52. At all times, Ms. Flanagan acted contemporaneously as a concerned citizen and DSS employee, and her comments and actions concerning Mr. Scearce were made in order to bring these issues to light.

53. Ms. Flanagan's interest in participating in political speech regarding matters of public concern outweighed any competing governmental interests.

54. Ms. Flanagan's August 15, 2018 comments to VSBSS, a method of political speech protected by the First Amendment of the U.S. Constitution, was designed to ensure proper functioning of Pittsylvania County; not in order to disrupt any function of the

9

County.

55. Defendants Pittsylvania County, Mr. Scearce, Ms. Eanes, Ms. Evans, and Ms. Johnson (hereinafter, "Pittsylvania Defendants") retaliated against Ms. Flanagan by wrongfully denying Ms. Flanagan due process of law, and terminating Ms. Flanagan approximately two weeks subsequent to her involvement in political speech concerning Mr. Scearce.

56. The Pittsylvania Defendants violated Ms. Flanagan's First Amendment rights such that a cause of action arose out of 42 U.S.C. § 1983.

57. As a direct and proximate result of the Pittsylvania Defendants' actions, Ms. Flanagan has suffered and will continue to suffer pecuniary loss, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

58. The Pittsylvania Defendants were, or should have been, aware that they violated Ms. Flanagan's First Amendment rights when they terminated Ms. Flanagan because of protected political speech.

59. The Pittsylvania Defendants acted with reckless and/or callous indifference when they terminated Ms. Flanagan because of this speech.

### COUNT III: DUE PROCESS DEPRIVATION OF LIBERTY INTEREST IN VIOLATION OF 42 U.S.C. § 1983
(against Defendants Pittsylvania County, Mr. Scearce, Ms. Eanes, Ms. Evans, and Ms. Johnson)

60. Ms. Flanagan incorporates by reference herein the preceding paragraphs of this Complaint.

61. Due to the acts and/or omissions of the Pittsylvania Defendants, including, but not limited to, Mr. Scearce's numerous malicious and false statements to members of the public concerning Ms. Flanagan's personal and professional character, work

performance, fitness to perform the duties of her employment, and credibility, and the circumstances surrounding Ms. Flanagan's August 30, 2018 termination from employment, Ms. Flanagan's honor, integrity, name, and reputation were damaged.

62. This damage has created a stigma limiting Ms. Flanagan's future employment opportunities, detrimentally affecting her position in the community and her professional field and damaging her personal and professional reputation, such that prospective employers would not consider hiring her.

63. The Pittsylvania Defendants intentionally failed to provide Ms. Flanagan sufficient opportunity to respond to the numerous false statements and allegations levied against her, or otherwise provide her with an appropriate hearing or procedural process by which she could seek to clear her name.

64. At all times, the Pittsylvania Defendants acted to create and disseminate a false and defamatory impression regarding Ms. Flanagan in connection with her position as DSS Director, as well as the circumstances surrounding her termination from employment, such that her liberty interests were deprived.

65. Any proffered justification by the Pittsylvania Defendants for their conduct and/or Ms. Flanagan's termination is pretextual and false.

66. As a direct and proximate result of the Pittsylvania Defendants' actions, Ms. Flanagan has suffered and will continue to suffer pecuniary loss, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary loss.

WHEREFORE Plaintiff Sherry Roberts Flanagan prays for judgment against Defendants Pittsylvania County, Nancy Eanes, Patricia Evans, Andrea Johnson, Ronald Scearce, Henry Hurt, and Victor Ingram, jointly and severally, consistent with these

allegations, and requests that the Court award her general damages in the amount of Two Million Dollars ($2,000,000.00) and compensatory and punitive damages in the amount of Two Million Dollars ($2,000,000.00), together with pre-judgment interest from the date of the statements, as well as incidental and consequential costs associated herewith, including attorney's fees and such other relief as a competent Court would deem appropriate.

**JURY TRIAL RESPECTFULLY REQUESTED**

Respectfully submitted,

SHERRY ROBERTS FLANAGAN

By: _____
Thomas E. Strelka, Esq. (VSB No. 75488)
L. Leigh R. Strelka, Esq. (VSB No. 73355)
N. Winston West IV, Esq. (VSB No. 92598)
STRELKA LAW OFFICE, PC
Warehouse Row
119 Norfolk Avenue, S.W., Suite 330
Roanoke, VA 24011
(540) 283-0802
thomas@strelkalaw.com
leigh@strelkalaw.com
winston@strelkalaw.com

*Counsel for Plaintiff*