IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

| | | |
|---|---|---|
| SHERRY ROBERTS FLANAGAN, ) | | |
| ) | | |
| Plaintiff, ) | Case No. 7:19cv00413 | |
| ) | | |
| v. ) | **MEMORANDUM OPINION** | |
| ) | | |
| RONALD SCEARCE, ) | By: Hon. Thomas T. Cullen | |
| ) | United States District Judge | |
| Defendant. ) | | |

In 2018, Defendant Ronald Scearce, then a member of the Pittsylvania County Department of Social Services Board (the "Board"), and others in the community, waged a public campaign against Department of Social Services ("DSS") Director, Plaintiff Sherry Roberts Flanagan, that ultimately culminated in Flanagan's ouster. This public spat—which at times involved scurrilous allegations and vitriolic rhetoric—was widely covered by the local media, and it divided the community. Following her termination, Flanagan filed the instant lawsuit. In her suit, she alleges that, after giving a speech in which she pushed back against her critics—a speech that put her at odds with Scearce's position on those issues—she was fired as Director of the DSS, in violation of her First Amendment rights. Flanagan also contends that Scearce's actions as a member of the Board related to her termination violated her Fourteenth Amendment due process rights.[1]

Prior to filing suit, Flanagan hired an attorney, who promptly sent a standard "Preservation of Evidence" letter to several individuals, including Scearce. During discovery,

---

[1] Scearce has separately moved for summary judgment on these two claims, and the court will issue a written decision on that motion in the coming days.

it became apparent that certain emails Scearce had sent or received may have been deleted, and Facebook messages Scearce exchanged with another Board member a couple of months following Flanagan's termination suggest that Scearce deleted some emails intentionally. Flanagan believes Scearce did so in order to keep the evidence out of her hands, and accordingly has moved to sanction Scearce for this alleged spoliation in the form of an adverse-inference instruction at trial. For the following reasons, Flanagan's beliefs are insufficient to carry her burden to show a sanctionable spoliation of evidence.

## I.    Relevant Facts

To support her spoliation claim, Flanagan points to a series of Facebook messages that Scearce exchanged with Patricia Evans, a fellow Board member who also voted in favor of Flanagan's termination. (*See* Pl.'s Mem. in Supp. of Mot. for Sanctions for Failure to Preserve Evid. (hereinafter "Pl.'s Mem. in Supp.") pg. 6 [ECF No. 86-6].) These October 29, 2018, Facebook messages provide as follows:

> Ronald, sent October 29, 2018
> 
> I'm kind of torn about what to do myself considering what Henry said. I want to be in the right on this.
> 
> Ronald, sent October 29, 2018
> Feels like a fishing expedition for sherry though.
>
> . . .
>
> Ronald, sent October 29, 2018
>
> I also deleted a lot of emails too. I try not to keep too much in my account anyway.

According to Flanagan, these messages—insofar as they are between two Board members and directly refer to Flanagan ("Sherry"), former codefendant and vociferous Flanagan critic Henry Hurt ("Henry"), and Flanagan's "fishing expedition"—establish that Scearce intentionally deleted relevant evidence in this case. (Pl.'s Mem. in Supp. pgs. 4–5.)

Flanagan also contends that Scearce spoliated evidence when his personal computer "crashed" in November 2018 and he failed to take immediate steps to recover potentially relevant email messages from his internet service provider, Chatmoss. (Pl.'s Reply Br. in Support of Pl.'s Mot. for Sanctions for Failure to Preserve Evid. (hereinafter "Pl.'s Reply Br.") pgs. 4–5 [ECF No. 106].) Scearce waited nearly two years—until late 2020, or well into the discovery phase of this lawsuit—before attempting (unsuccessfully) to recover relevant emails that were lost due to the computer crash.

Scearce filed a sworn declaration rebutting Flanagan's general claim that he spoliated relevant evidence—including his personal emails—and explaining his Facebook comments about deleting emails, which he contends Flanagan has taken "out of context." (Decl. of Ronald Scearce ¶ 3, June 30, 2021 [ECF No. 93-1].). In his Declaration, Scearce avers that he "did not delete emails after receiving the preservation letter." (*Id.* ¶ 2.) Scearce adds that his reference to deleting emails in the Facebook messages refers to his "general practice of deleting emails to keep my inbox organized and minimal[,]" and that he was "not referring to intentionally deleting emails after receiving the preservation letter." (*Id.* ¶ 3.) Regarding the November 2018 computer crash, Scearce attests that he had attempted to recover all personal emails potentially relevant to this litigation, but that his internet service provider had informed him that they were not recoverable. (*Id.* ¶ 2.)

On August 9, 2021, the court held an evidentiary hearing on Flanagan's motion for sanctions. Flanagan did not present any additional evidence at that hearing to support her claim that Scearce had intentionally deleted relevant emails; instead, she simply relied on the Facebook messages described above, as well as the undisputed facts surrounding Scearce's computer crash and his belated efforts to retrieve lost emails. The court, however, called Scearce as a witness to flesh out the facts underlying Flanagan's claims.

Consistent with his Declaration, Scearce testified that he received Flanagan's preservation letter in or around the end of July 2018. (Evid. Hr'g Tr. at 7:17–8:5.)[2] Scearce added that he understood that this letter legally obligated him to identify and save all emails from his personal account that were related to Flanagan and the DSS. Scearce testified that he did exactly that:

> The Court: Tell me what you did. You get this letter in late July of 2018. You just testified you understood that means you've got to keep emails and things relating to Ms. Flanagan. What steps did you take immediately upon receiving this letter to make sure you were saving those types of materials?
>
> [Scearce]: Well, I had already accumulated plenty of documentation and again just tried to preserve what I had.
>
> The Court: Well, let's talk about specifically your Chatmoss email. When you got that letter or shortly thereafter, did you go into your Chatmoss email account and try to identify responsive emails about Ms. Flanagan?
>
> [Scearce]: Yes, sir.
>
> The Court: Tell me what you did, what your process was?

---

[2] Citations to the "rough" transcript of that hearing are cited as "Evid. Hr'g Tr.," and that transcript will be docketed as an addendum to this Memorandum Opinion. It is not a final transcript of the hearing and should not be used for any other purpose other than to confirm the court's recitation of the relevant testimony. If and when a final transcript is prepared, the final transcript will be the official court record of the proceedings and, if this opinion differs from the final transcript, the final transcript will be adopted.

> [Scearce]: Just reviewed any sent items, any items that came in. I had a separate folder for those items and those things were preserved.
>
> The Court: All right. So you actually created a separate folder?
>
> [Scearce]: Yes, sir.
>
> The Court: How did you do that? I'm not technologically all that savvy.
>
> [Scearce]: That was--with the email account there was a--I guess for Microsoft mail you can add a folder for specific things you want to move over there, and I had a specific folder concerning DSS that those items were in.
>
> The Court: All right. And when you received that letter in late July, your testimony is that you went back and tried to identify any emails that would be responsive or covered by that letter--
>
> [Scearce]: Yes, sir.
>
> The Court: --and you put them in that folder.
>
> [Scearce]: Yes, sir.
>
> The Court: Going forward did you employ the same process?
>
> [Scearce]: Yes, sir.

(*Id.* at 9:10–10:21.)

Regarding the October 2018 Facebook messages with fellow Board member Patricia Evans, Scearce admitted that in referencing "Henry" and "Sherry," he was discussing, in a general way, the imbroglio involving himself, Flanagan, and the Board, but that he could not recall what he meant when he had written that he was "kind of torn about what to do myself considering what Henry had said." (*See id.* at 12:14–13:22.) Scearce testified, however, that his use of the term "fishing expedition" was not a reference to Flanagan's July 2018 preservation

letter, but to the investigation by the Virginia Attorney General's Office, related to the conduct of the Board, that arose following Flanagan's termination. (*Id.* at 14:20–16:15.)

Importantly, Scearce testified that he had not deleted any emails subject to Flanagan's preservation letter. When asked what he meant in his message to Ms. Evans that he deletes a lot of emails, Scearce said:

> [Scearce]: That was just my normal practice for me to not save--really even with the county account I didn't save a whole lot of emails because I knew they were always, you know, saved. So to me it was--this again was going back to the Attorney General's office request. I didn't--I didn't really have an issue with anything that was going on.
>
> The Court: But you testified a second ago that when you got the preservation letter in July--
>
> [Scearce]: Yes, sir.
>
> The Court: --you took steps looking back and going forward to preserve anything related to Ms. Flanagan--
>
> [Scearce]: Yes, sir.
>
> The Court: --and DSS; is that correct?
>
> [Scearce]: Yes, sir.
>
> The Court: Did you delete any of those emails?
>
> [Scearce]: No, sir.
>
> . . .
>
> The Court: Your testimony is that in the course of that exchange when you're talking about a fishing expedition, Sherry and Henry, when you refer to the deletion of emails, you weren't referring to deleting emails relating to Ms. Flanagan and DSS?

> [Scearce]: Yes, sir. This whole exchange was directly related to the Attorney General's office and their investigation with me at that time.

(*Id.* at 16:16–17:12; 18:2–9.)

Although Scearce consistently maintained—both in response to the court's questions and while under cross examination by Flanagan's attorney—that he had not intentionally deleted any responsive emails from his personal account, he conceded that he lost relevant emails when his personal computer crashed in November 2018:

> The Court: And as I understand your declaration, you just alluded to this, once you had your new computer you tried to reestablish your Chatmoss email in the new computer; is that that correct?
>
> [Scearce]: Yes, sir.
>
> The Court: And what happened?
>
> [Scearce]: Well, it did not download any old--I was working off Windows 2017, I think, mail, so it was an older program. And I don't know if that had anything to do with how things got downloaded, but I don't really—the only thing that popped up is recent emails.
>
> The Court: All right. So you get the new computer, you try to reestablish your email account, and all you're seeing is just emails from that time forward?
>
> [Scearce]: Right.
>
> The Court: What happened to that folder that you were saving all of Sherry Flanagan's emails?
>
> [Scearce]: I assume that that's the program that's on the computer.
>
> The Court: So that was lost.
>
> [Scearce]: Yes, sir.

(*Id.* at 20:21–21:16.) Despite his recognition that he had lost relevant emails in the crash, Scearce testified did not take any steps to attempt to recover them for two years. (*Id.* at 31:23–32:8.) In late 2020, during the discovery phase of this lawsuit, Scearce contacted his internet service provider about restoring these emails, but his provider informed him that they were no longer on its server.[3] (Scearce Decl. ¶ 2.) Scearce also admitted that he had not taken additional steps after he received Flanagan's preservation letter (but prior to the crash) to protect the Flanagan emails, such as exporting them to an external hard drive.

Other than questioning Scearce—whose testimony was initiated by the court—Flanagan did not present any evidence at the hearing.[4] Flanagan nevertheless argues that Scearce's Facebook messages and his failure to take steps to protect—and, later, to recover in a timely fashion—the relevant emails demonstrate that his spoliation was willful and in bad faith, and that an adverse-inference instruction is warranted. Scearce counters that his testimony and the undisputed evidence about his computer crash established, at most, that he had been negligent in his handling of the Flanagan emails, and therefore that the requested sanction is not warranted. In so doing, Scearce points out that over 400 pages of Scearce's emails were produced during discovery and through the issuance of third-party subpoenas,

---

[3] It is unclear if, once they were downloaded onto Scearce's computer, the emails were ever recoverable from his internet service provider; Flanagan did not offer any evidence on this point. Therefore, it is not self-evident that Scearce's two-year delay in seeking the emails had any bearing on whether or not they were recoverable.

[4] For example, Flanagan did not provide any evidence as to the nature, number, or time frame of the emails she believes Scearce intentionally deleted (or failed to preserve) from his personal account.

and that Flanagan has failed to offer any evidence that any of the emails that may have been lost when Scearce's computer crashed were not obtained from other sources.[5]

## II. Discussion

Spoliation "'refers to the destruction or material alteration of evidence or to the failure to preserve property for another's use as evidence in pending or reasonably foreseeable litigation.'" *E.I. du Pont de Nemours & Co. v. Kolon Indus.,* 803 F. Supp. 2d 469, 496 (E.D. Va. 2011) (quoting *Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 590 (4th Cir. 2001)). In evaluating a spoliation claim, courts employ a two-part test. First, the party alleging spoliation must show "that the adverse party had a duty to preserve documents or materials that may be relevant to the litigation or pending litigation." *Id.* "A party that anticipates litigation . . . is 'under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.'" *Id.* (quoting *Samsung Elecs. Co. v. Rambus, Inc.*, 439 F. Supp. 2d 524, 543 (E.D. Va. 2006)). If the court finds that such a duty existed, it must "then consider whether the party breached this obligation, either by failing to preserve, or by destroying or altering, relevant materials or documents with a culpable state of mind." *Id.* at 497. "In the Fourth Circuit, any level of fault, whether it is bad faith, willfulness, gross negligence, or ordinary negligence, suffices to support a finding of spoliation." *Id.*

---

[5] Indeed, Flanagan did not contest this point directly; instead, she argued that Scearce's mishandling of responsive emails forced her to incur significant inconvenience and expense to procure those records from other sources.

But that does not end the inquiry. Even when spoliation has occurred, the affected party must then show that the sanction requested is appropriate. In the Fourth Circuit, it is well-established that an adverse-inference instruction, as a sanction, is only appropriate where the party seeking that sanction demonstrates that the responsible party "acted either willfully or in bad faith in failing to preserve relevant evidence." *Sampson v. City of Cambridge*, 251 F.R.D. 172, 181 (D. Md. 2008) (citing *Hodge v. Wal-Mart Stores*, Inc., 360 F. 3d 446, 450–51 (4th Cir. 2004)). Conversely, an adverse-inference instruction is not warranted where "the spoliator's conduct is merely negligent." *Id.*; *see also Vodusek v. Bayliner Marine Corp.*, 71 F.3d 148, 156 (4th Cir. 1995) ("An adverse inference about a party's consciousness of the weakness of his case, however, cannot be drawn merely from his negligent loss or destruction of evidence; the inference requires a showing that the party knew the evidence was relevant to some issue at trial and that his willful conduct resulted in its loss or destruction.").

Applied here, the court has no trouble concluding that Scearce had a duty to preserve potentially relevant evidence once he received Flanagan's preservation letter in late July 2018. *Accord Silvestri v. Gen. Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001) ("The duty to preserve material evidence arises not only during litigation but also extends to that period before the litigation when a party reasonably should know that the evidence may be relevant to anticipated litigation."). This element is not in contest. Scearce testified that he understood Flanagan's letter as triggering that legal obligation and, as a result, he took steps to identify and save emails and other records about Flanagan—and therefore relevant to her potential claims and defenses in the impending litigation—in his personal email account.

It is also undisputed that Scearce breached this obligation by failing to preserve these relevant emails. Specifically, Scearce fell short in two ways: First, by not taking steps beyond moving relevant emails to a separate folder in his inbox, such as exporting them to an external hard drive or making hard copies; and second, by waiting two years after his computer crashed to contact his internet service provider to attempt to recover the emails that he knew, or should have known, were no longer in his inbox. Scearce therefore spoliated relevant evidence.

But the court cannot find, based on the evidence presented by Flanagan, that Scearce's mishandling of the emails was done either willfully or in bad faith such that an adverse-inference instruction is warranted. Although Flanagan argues that the Facebook messages conclusively establish that Scearce intentionally deleted relevant emails, this evidence, on its own, does not satisfy her burden. Without question, these Facebook messages suggest that Scearce *may* have deleted emails related to Flanagan and the local DSS. This was the court's overarching concern and its primary purpose for calling Scearce as a witness to testify about this exchange. But Scearce adequately explained—both in response to the court's and opposing counsel's questions—the specific context for these statements, and he consistently maintained that he did not intentionally delete any emails that were covered by the preservation request.[6] Moreover, Flanagan failed to present any other evidence to establish that Scearce

---

[6] Accepting as true Scearce's assertion that the so-called "fishing expedition" refers to the Attorney General's investigation in the fall of 2018 rather than Flanagan's July 2018 preservation request, the court notes that there may have been some overlap between that investigation and the information covered by Flanagan's preservation request. Insofar as the Facebook messages and Scearce's testimony at the evidentiary hearing could be construed as establishing that Scearce may have deleted emails that would have been responsive to the investigation, it is *possible* that, in so doing, he also deleted emails relevant to this litigation. But the specifics of the Attorney General's investigation, including what if any records may have been requested from Scearce, are not part of the record, and Flanagan's counsel did not press this point or otherwise prove that, in fact, Scearce intentionally deleted any emails.

intentionally deleted relevant emails, despite having a full and fair opportunity to do so.[7] In short, Flanagan has failed to carry her burden of proving Scearce willfully destroyed relevant evidence.

Instead, the court concludes that the evidence presented by Flanagan establishes that Scearce was negligent when he failed to take additional steps to preserve relevant emails and in failing to attempt to recover emails he knew might be jeopardized in a timely fashion.[8] *See In re Ethicon*, 299 F.R.D. 502, 518 (S.D.W. Va. Feb. 4, 2014) ("Negligence is a lack of due care, the failure to exercise the level of care expected of a reasonably prudent person acting under like circumstances."). Although Scearce should certainly have been more diligent in fulfilling his legal duty to safeguard the emails at issue, the court cannot find, based on the evidence presented by Flanagan, that he engaged in deliberate misconduct to disadvantage her in the impending litigation, or that he otherwise intended to destroy relevant evidence. Put simply, Flanagan has established that Scearce acted carelessly, not that he engaged in intentional wrongdoing. The court will therefore deny Flanagan's motion for sanctions.

---

[7] For example, Flanagan did not seek to depose Evans about these messages or call her as a witness at the evidentiary hearing. Flanagan also did not present any evidence or testimony from Scearce's internet service provider about his personal email account—either prior to or after the November 2018 computer crash.

[8] Chatmoss's email suggested that the emails *may* have been recoverable had Scearce reached out to them sooner, but Flanagan has not shown that they *were*. Nevertheless, Scearce's dilatory attempts to recover the emails is relevant to the court.

- 13 -

### III. Conclusion

For the foregoing reasons, Flanagan has failed to show that Scearce engaged in deliberate misconduct that warrants an adverse-inference instruction. Her motion for sanctions will be denied.

The clerk is directed to forward a copy of this Memorandum Opinion and accompanying Order to the parties.

**ENTERED** this 19th day of August, 2021.

*/s/ Thomas T. Cullen*
HON. THOMAS T. CULLEN
UNITED STATES DISTRICT JUDGE